199 So.2d 698

**H. C. PITTMAN**

**v.**

**STATE.**

**1 Div. 195.**

Court of Appeals of Alabama.

March 14, 1967.

Rehearing Denied April 4, 1967.

W. C. Owens, Monroeville, for appellant.

Richmond M. Flowers, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

CATES, Judge.

This appeal was submitted December 8, 1966. Only the Attorney General has filed a brief.

### I.

Pittman was convicted on a trial de novo (Code 1940, T. 13, §§ 371 and 372) in the Monroe Circuit Court. The charge against him was as follows:

> "The State of Alabama, by its District Attorney complains of H. Clay Pittman that within twelve months before the commencement of this prosecution he did aid encourage, or cause Larry Bell, Jackie Bell and Jimmy Bell, children under sixteen years of age, to become dependent, neglected, or delinquent, or has, by word act or omission, threats, commands or persuasion, induced or endeavored to induce, aided or encouraged such child in such county to do or perform an act, or to follow a course of conduct which would cause or manifestly tend to cause such child to become or remain dependent, neglected or delinquent in that the said H. Clay Pittman did within said twelve months, within said County cause the said Larry Bell, Jackie Bell and Jimmy Bell to become abandoned, left alone without adult supervision, care, without food or means to obtain food and support, by removing the Mother of said minor children from the family home and leaving the children alone and without anyone to care for or support them. against the peace and dignity of the State of Alabama."

■ To this complaint Pittman filed demurrers. The transcript of testimony shows that the court overruled these. However, the circuit clerk, certifying that the record sent up contains "a full, true and complete transcript of the record and proceedings," has not copied any minute entry therein as to the court's ever ruling on the demurrers.

Hence, we can only treat the matter in the transcript of evidence as mere expression of an opinion. Parson v. State, 39 Ala.App. 142, 96 So.2d 206; Reeves v. State, 39 Ala.App. 164, 98 So.2d 857.

In Campbell v. State, 29 Ala.App. 343, 195 So. 775, we find (per Mr. Justice Simpson, then one of the puisne judges of this court) applying the rule of Jasper Mercantile Co. v. O'Rear, 112 Ala. 247, 20 So. 583, to a criminal case, thus:

> "The record discloses no sufficient judgment on demurrers which will support a review. The recital in the record: 'The demurrers of the defendant to the Indictment are overruled and the defendant excepts,' is at most but a copy of a bench note or an ex parte memorandum of the clerk and is wholly ineffective and insufficient as a judgment disposing of the demurrer."

■ Here, other than the court reporter's transcription, we have not been furnished any recitation, even of the meager directions used on a judge's bench notes. Our review on such a point can only be evoked by a formal judgment which orders the demurrers to be overruled. Beatty v. State, 36 Ala.App. 699, 63 So.2d 287.

A like rationale covers the overruling of a motion to quash.

### II.

#### Issues

The judgment entry recited the verdict as one finding the defendant "guilty of Aiding or Contributing to the delinquency of a minor as charged in the Complaint." The court sentenced Pittman to hard labor for the county for twelve months. Code 1940, T. 13, §§ 369 and 372.

The misdemeanor for which Pittman stands convicted is created by what is now T. 13, § 366, which reads in pertinent part:

"§ 366. It shall be unlawful for any parent, guardian, or other person to aid, encourage, or cause any child under sixteen years of age to become or remain dependent, neglected or delinquent, * * * or by neglect of any lawful duty or in other manner contribute to the dependency, neglect or delinquency of a child under sixteen years of age. * * *"

Section 350, ibid, sets forth the following definitions:

"§ 350. (1) For the purposes of this chapter the words 'dependent child' shall mean any child, who, while under sixteen years of age, for any reason, is destitute, homeless, or is dependent on the public for support; or who is without a parent or guardian able to provide for his support, training and education; or whose custody is the subject of controversy. (2) The words 'neglected child' shall mean any child, who, while under sixteen years of age is abandoned by both parents, or if one parent is dead, by the survivor, or by his guardian, or custodian; or who has no proper parental care or guardianship or whose home, by reason of neglect, cruelty, or depravity, on the part of his parent or parents, guardian or other person in whose care he may be, is an unfit or improper place for such child; or who is found begging, receiving or gathering alms, or who is found in any street, road or public place for the purpose of so doing, whether actually begging or doing so under the pretext of selling or offering for sale any article or articles, or of singing or playing on any musical instrument, or of giving any public entertainment or accompanying or being used in aid of any person so doing; or for whom his parent, parents, guardian or custodian, neglect or refuse, when able to do so, or when such service is offered without charge, to provide, or allow, medical, surgical, or other care necessary for his health, or well-being; or whose parent, parents, guardian or custodian permits such child to engage in an occupation or calling contrary to the provisions of the child labor law of this state; or whose parent, parents, guardian or custodian fail, refuse or neglect to send such child to school in accordance with the terms of the compulsory attendance law of this state; or who is in such condition or surroundings, or is under such improper or insufficient guardianship or control as to endanger the morals, health or general welfare of such child; or who is not being reared or cared for in accordance with the provisions of any law, regulation or ordinance for the education, care and protection of children; or who for any other cause is in need of the care and protection of the state. (3) The words 'delinquent child' shall mean any child who while under sixteen years of age violates any penal law of the United States or of this state, or any regulation, ordinance or law of any city, town or municipality, or who commits any offense or act for which an adult could be prosecuted in a method partaking of the nature of a criminal action or proceeding; or who is beyond the control of his parent, parents, guardian, or custodian, or who is otherwise incorrigible, or who is guilty of immoral conduct; or who is leading an idle, dissolute, lewd or immoral life; or who engages in any calling, occupation or exhibition punishable by law or is found in any place for permitting which an adult may be punished by law. * * *"

Since, as explained above, we cannot assess the validity of the demurrers, we can only square the complaint with the statute. We note in that connection the District Attorney's de novo complaint is substantially adapted from the originating affidavit form suggested in Code 1940, T. 13, § 367.

█ Under the details of "facts, acts, words, conduct, omissions, etc.," constituting the claimed offense, we find an allegation that:

(1) Pittman removed the children's mother from the "family home," thus leaving the children alone and without anyone to care for or support them; and

(2) Thereby causing the children "to become abandoned, left alone without adult supervision, care, food or means to obtain food and support."

This allegation in turn was averred to have made out that Pittman either:

(a) Aided, encouraged or caused the children to become dependent, neglected or delinquent, or

(b) Induced, or tried to induce, aided, or encouraged "such" child to cause himself (or herself) to become or remain dependent, neglected, or delinquent.

. We think under these allegations set against the defendant's plea of not guilty it was requisite for the State to prove both allegations (1) and (2) above in order to make out either alternative (a) or (b) of the offense denounced by § 366, supra.

### III.

### Facts

· The mother of the children in question was, at all times pertinent, the wife of one Homer Bell. Mr. and Mrs. Bell, though still man and wife, were not living together. No proof was made of what support Bell provided his wife or children.

The children were: Jimmy, five years old; Ronnie, nineteen; Jackie, fourteen; Tommy, seventeen; and Larry, sixteen. These ages are as of date of trial in the circuit court.

The three, Jimmy, Jackie and Larry were under sixteen in December, 1965, when Mrs. Bell went to Pensacola, Florida.

In August of 1965, Mrs. Bell was living in Excel. She was taken to Bryce Hospital in Tuscaloosa where she stayed about two months.[1]

When she returned—apparently on a six months probationary visit—she resided at the same place. The defendant called on her. Sometimes, according to Larry Bell, Pittman stayed at the Bell house overnight.

In December, 1965, the defendant drove Mrs. Bell in his car to Flomaton. Her family next heard from her at Pensacola.

She had arranged for the youngest child to stay with an uncle. The daughter was already staying with another brother. The oldest boy (under 16) stayed with his maternal grandfather.

The State did not attempt to prove that Mrs. Bell was insane: her testimony showed she faced a complaint for abandoning the children.

### IV.

Indulging the presumption of her sanity, we consider it was then requisite for the prosecution to adduce proof that Pittman overcame Mrs. Bell's freewill. Though we were to accept the State's innuendo that the two had plotted to rendezvous on the silver sands of Pensacola Bay, nevertheless there was no proof that Pittman was aware that his claimed criminal conversation with Mrs. Bell entailed that she, in panting haste, would make no plans for the care of her children.

Moreover, under the State's charge and § 350, supra, by definition of a "neglected child" pertinent under the instant evidence, since Mr. Bell, the father of these infants, was living, it was requisite for the prosecution to show that the children had "no proper parental care or guardianship or

1. Code 1940, T. 45, § 205: "A person shall be adjudged insane who has been found by a proper court sufficiently deficient or defective mentally to require that, for his own or others' welfare, he be moved to the insane hospital for restraint, care and treatment. Whether the person's mental abnormality is sufficiently grave to warrant such procedure is always the question to be decided by the court." This definition is not enough to absolve from criminal responsibility.

[their] home, by reason of neglect, * * * on the part of * * * [their] parents, guardian or other person in whose care [they] may be, [was] an unfit or improper place for [them]."

This statutory element of the offense (i. e., that the children became dependent, neglected or delinquent) was further constricted by the allegation that Pittman caused their state "by removing the Mother * * * from the family home [thus] leaving the children alone, * * *" etc.

■ Causation in criminal law is less rigorous than in civil. It is generally phrased as substantially contributing to the deed.

In the commission of misdemeanors, the Common Law does not distinguish between principal and accessory. Boyd v. State, 3 Ala.App. 178, 57 So. 1019; Cole v. State, 27 Ala.App. 90, 166 So. 58.

Layne v. State, 32 Ala.App. 34, 21 So. 2d 553, says:

"* * * in order to authorize a conviction as an aider or abettor, there must be prearrangement, or on the spur of the moment, a common enterprise or adventure and a criminal offense contemplated. In such a case each is a conspirator, and, if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. * * *"

■ This charge, however, is against Pittman alone. He was accused of removing the mother. This removal was alleged to have deleterious effects on the children.

Hence, the abandonment of the children by the mother would have to be shown to have been at Pittman's instigation. This presupposes that this instigation or incitement or encouragement would have as its reasonably foreseeable consequence that the mother was leaving the children without care.

While Pittman's removing the mother may have been furtherance of criminal con-

versation, nevertheless to convict him *as here charged,* the State must prove scienter.

■ This was not done. Under the prosecution's theory here, had a cab driver taken Mrs. Bell to Flomaton as a passenger, he could have been guilty of removing the mother.

The motion to exclude the State's evidence was, under the instant complaint and in the light of the evidence, due to have been granted rather than to have been overruled.

The judgment below is due to be reversed and the cause remanded.

Reversed and remanded.

JOHNSON, Judge (dissenting).

The statute upon which this case must turn is invoked for the protection of the minor children and not for the purpose of shielding a wrong-doing parent.

The mother and father of the three minor children were separated and the mother was the sole provider. Larry Bell, their fifteen year old son, testified that appellant was present in the Bell home on numerous occasions, sometimes sober, sometimes drunk; that he would come into the house at all hours of the day and night, and sometimes stay overnight. Larry testified that before the children were abandoned, appellant and his mother left the house and were out all night; that the following day they went out again at 7:00 P.M. and never returned to the home. The mother left as the sole provision for these three dependent children the sum of about $20.00 and made wholly inadequate arrangements for their care.

The evidence revealed that appellant was aware of the presence of the children and knew that this woman was their mother. His actions in taking the mother away from her home and children appear to have been willful and by design. Such removal alienated her from her children and responsibility. I cannot agree with the majority

opinion that the appellant had no knowledge that this was, in fact, what he was doing. My esteemed colleagues seem to have concluded that scienter or knowledgeable intent was a necessary element in this case. I feel that the evidence indicates that there was knowledge on the part of the appellant, or it should have been imputed to him, that his conduct would work a hardship on these children.

"Generally speaking, when an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, even when in terms not required. *The Legislature, however, may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer, and, if such legislative intention appears, the courts must give it effect, although the intent of the doer may have been innocent.* * * * The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted and knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt. * * *" (Emphasis ours.) Smith v. State, 223 Ala. 346, 136 So. 270; Fiorella v. City of Birmingham, 35 Ala. App. 384, 48 So.2d 761; Leonard v. State, 38 Ala.App. 138, 79 So.2d 803.

In Dixon v. State, 40 Ala.App. 465, 115 So.2d 262, the court states:

"Statutory crimes, unless employing such expressions as 'willfully,' 'intentionally,' or 'knowingly,' do not ordinarily require proof of mens rea. * * *"

Hence, it is clear that when an act is made criminal by legislative statute, knowledge is not an essential element in establishing the guilt of the wrong-doer. On this point alone I would feel it necessary to dissent.

The majority opinion feels that the mere fact that the father was present in the same

city with the children would be sufficient to absolve the mother of guilt. The applicable statutes state in part as follows:

"Sec. 366. It shall be unlawful for *any* parent, guardian, *or other person* to aid, encourage or cause any child under sixteen years of age to become or remain dependent, *neglected* or delinquent * * * or by neglect of *any* lawful duty or in other manner *contribute* to the dependency, etc. * * *." (Emphasis ours.)

"Sec. 350. * * * who is without *a* parent or guardian able to provide for his support, training and education * * * or who has *no proper parental care or guardianship* or whose home, by reason of neglect, cruelty, or depravity, on the part of his *parent or parents,* guardian *or other person in whose care he may be* * * *" (Emphasis ours.)

The record makes it clear that the parent in whose care and protection (such as it was) the children were at the time of the alleged offense was the mother. The statute with which we are here concerned enjoins upon the parent who has the custody of and who is providing for the children the responsibility of protecting them.

The diabolical and nefarious conduct of appellant and the mother in this cause should not be condoned by a possible "loophole" in the law, for, as stated by that great poet and essayist, Ralph Waldo Emerson, "Men are what their mothers made them."

For the foregoing reasons, I most respectfully dissent from the majority opinion.

## ON APPLICATION FOR REHEARING

CATES, Judge.

The "scienter" we referred to is that foreknowledge of reasonable consequences which was required by the narrowness of the State's pleading. The gravamen of the complaint was "removing the Mother of said minor children from the family home

and leaving the children alone and without anyone to care for or support them." Pittman thereby caused the alleged secondary mischief. See Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654.

Pittman was not only accused of "removing" the mother but also of "leaving the children," etc. There was no proof that he had accepted their custody or care.

Hence the State had to prove that he knew or had reasonable cause to believe that the mother was abandoning them.

Probably, when his act without intervention affects a child immediately, a defendant who harms a minor without knowing whether it is under sixteen or not acts at his own peril.

In the foregoing opinion of the majority, we took pains to elaborate on the restricted scope to which the State reduced its allegation of the quo modo of Pittman's charged offense. Thus we do not reach the question of whether or not under all cases under Code 1940, T. 13, § 366, supra, it is needful to prove directly or by circumstances that the defendant is aware of the illegal character of his act.

Application overruled.