237 So.2d 515

Johnny B. GIBBS

v.

STATE.

2 Div. 5.

Court of Criminal Appeals of Alabama.

June 16, 1970.

Adams & Baker, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

CATES, Judge.

This is the second appeal. See Gibbs v. State, 44 Ala.App. 15, 200 So.2d 518.

I

The grand jury, April 24, 1968, reindicted Gibbs for voluntary manslaughter. Code 1940, T. 14, § 320. He moved to quash both the indictment and the petty jury venire because of systematic exclusion of Negroes from the Marengo County rolls. The motion was denied, with the court reporter (but not the clerk) writing up this ruling.

In brief the Attorney General wrote in part:

"The United States District Court for the Southern District of Alabama in

Jones v. Holliman, Civil Action No. 3944–65, [422 F.2d 656] found no systematic exclusion of Negroes from the jury and held that injunctive relief was not in order. Appellant infers that this order will be reversed by the Fifth Circuit Court of Appeals. That case is set for oral argument on October 16, 1969, in Montgomery, Alabama, and a speedy decision on that appeal may answer contentions of both parties in this case as to whether discrimination exists."

As predicted, the Fifth Circuit has now reversed Judge Thomas in Jones v. Holliman, 422 F.2d 656, February 6, 1970, consolidated, see Black v. Curb, 422 F.2d 656.

■ However, do we on the instant record reach the merits [1] of the oral ruling of the trial judge? No minute entry of that ruling appears. In Thompson v. State, 149 Ala. 37, 43 So. 115, the opinion begins:

"DENSON, J. A motion was made in the court below to quash the venire of jurors summoned for the second week of the term of the court. The bill of exceptions recites that this motion was overruled, but there is no entry in the judgment proper showing that the court made any ruling on the motion. In this state of the record we will not review the ruling of the court on the motion. * * *"

Section 32 of Act 987 of September 12, 1969, clearly envisages cases wherein this Court may consider itself not bound by "a prior decision of the supreme court (sic) on the same point of law." But we do *not* avail ourselves of this approach.

The view we take here comports with our construction of the Supreme Court's answers to questions certified by the former Court of Appeals in Ex parte Donahay. See Ex parte Donahay, 45 Ala.App. 583, 233 So.2d 522, 3rd Div. 7, mss. January 6, 1970.

In Donahay's trial the court had ruled orally (as shown by the court reporter's transcript) on a motion to quash the indictment. The first question put by the Court of Appeals was, in part: "Does the court's statement * * * become a part of the record proper on appeal so as to reserve for our consideration the legal validity of his rulings on the motions and plea?"

To this the Supreme Court responded "yes" with a qualification which alluded to Lewis v. Martin, 210 Ala. 401, 98 So. 635, and the *Thompson* case, supra.

Lewis v. Martin, supra, was a will contest on the equity side. Judge Thomas's explanatory remarks about the need for a judgment entry after verdict seem to have the only relevance to the problem of instant concern. However, Act No. 461 (1943), as amended (see Michie's 1958 Code, T. 7, § 827(1) et seq.), abolished bills of exception in trials at law.

This Act provides that the court reporter must now take down and transcribe the judge's rulings made in the course of the trial court's hearing evidence. We conclude, therefore, that here *Thompson*, supra, should not control.[2] In cases where the court in a criminal trial takes evidence on a motion and rules thereon with the court reporter taking the ruling down, Act No. 461, July 12, 1943, as amended [§§ 827 (1)–827(6), supra], has modified the *Thompson* opinion, unless a contradictory minute entry has been put in the same record.

---

1. 30 Ala.Lawyer, 124:
   " * * * 'Under the present rules of the Supreme Court of Alabama, a disproportionate number of the decisions of said Court dispose of appeals without consideration of the merits of the litigation.' "

2. The discussion in Part I in Pittman v. State, 43 Ala.App. 683, 199 So.2d 698, must necessarily be read in the light of the trial judge's ruling without taking evidence.

## II

■ Without detracting from the essential conclusion herein reached, we nevertheless think it worth pointing out that as a practical matter we consider that the Fifth Circuit decision in Jones v. Holliman, supra, must be treated as effectively disposing of this particular appeal. The Fifth Circuit has no direct control over either this Court or the Supreme Court of Alabama. Yet as was recognized by Mr. Justice Lawson in Smith v. State, 282 Ala. 268, pp. 292-293, 210 So.2d 826, p. 849:

"Even if we were inclined to agree with the holdings of the cases last cited, our conclusion would not be binding on the federal courts. We must face reality. Since the United States Circuit Court of Appeals for the Fifth Circuit in the Gibson case, supra, held, in effect, that the Miranda rule applies to retrials occurring after June 13, 1966, of cases which were originally tried prior to the Miranda decision, we entertain the view that the safer course for the trial courts of this state to follow until the Supreme Court of the United States has finally determined the question is to comply with the Gibson case, supra.

"If Smith is retried and convicted without the rule of the Gibson case being applied, and if we affirm the judgment of the court below on appeal to this court by Smith, our action would be altogether unavailing. Smith, under Faye v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, could institute habeas corpus proceedings in a United States District Court and that court would, no doubt, feel compelled to follow the holding of the United States Court of Appeals for the Fifth Circuit in the Gibson case, supra."

Also, the opinions of the Supreme Court of the United States in Carter v. Jury Commission of Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 and Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 both delivered January 19, 1970, seem to establish a virtual prima facie requirement of approximate proportion between white and Negro adults as shown by a census roll in comparison with a jury roll.

In the instant case, the district court's opinion in Jones v. Holliman, supra, was submitted as part of the defendant's motion to quash. The United States District Court apparently compared white and black adults 21 to 64 years of age.[3] The Fifth Circuit's disagreement with Judge Thomas is not fully articulated as to Marengo County but there is no doubt that it rests mainly on the Turner opinion, supra.

3. Also, Judge Thomas in Jones v. Holliman, supra, relied on an interim report of the jury roll dated December 20, 1968. His opinion said, in part:
"The plaintiffs assert that they and other members of their race are being systematically excluded from jury service on the grand and petit juries in the Circuit Court of Marengo County. In support of this position, the plaintiffs offered testimony relating statistical data of Marengo County's population, voter registration lists and jury rolls and the racial composition of each. Stating the 1960 census for Marengo County, the plaintiffs showed that non-whites composed 56% of the eligible population for jury duty; that non-whites composed approximately 45% of the registered voters in the county in 1966. In comparison, the plaintiffs showed that only 29% of the names on the jury rolls as of September 1968 were Negroes. Relying on the evidentiary principle that marked variations of Negroes on jury list as compared to the population census raises an inference of systematic exclusion, the plaintiffs offered no further evidence. "To rebut this inference, the defendants introduced testimony to the effect that the illiteracy and criminal conviction ratio between whites and non-whites is extremely disproportionate to non-whites, thus less Negroes are qualified to serve as jurors than whites. The chairman of the jury commission further testified that the commission is continually searching for qualified jurors with complete disregard for race. Recent alterations to the current jury rolls verifies this testimony

**34**

Even though the Supreme Court of the United States in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, has again given lip service to the principle of rejecting proportionate representation in systematic exclusion cases, any realistic critique of that court's decisions, ranging from Strauder v. W. Va., 100 U.S. 303, 25 L.Ed. 664 down through *Carter* and *Turner,* at the very least, shows operative results (i. e. reversing judgments) from which it is inescapable to conclude that disproportionate representation in but a slight degree causes a prima facie shift of the burden over to the prosecution to dispel the claim of systematic exclusion.

Judge Coleman for the panel in Black v. Curb, 5 Cir., 422 F.2d 656, said:

> *"Turner* held, in the absence of countervailing explanation, that where Negroes constituted only 37% of the citizens on a jury list chosen from a population composed 60% of members of that race corrective action was warranted.
>
> "II
>
> *"Jones v. Holliman*
>
> "This case comes from Marengo County, Alabama, situated in the same geographical area as Hale, Greene, and Wilcox. Essentially, it presents substantially the same facts and issues. We, therefore, decide it in the same opinion.
>
> "The jury roll in Marengo County clearly fails to met the standards prescribed in Turner v. Fouche, supra."

### III

We conclude that since the motion was due to be granted that the composition of the grand jury was such that the indictment was legally void. Hence, the judgment below is reversed and the defendant discharged from the present indictment.

Reversed and rendered.

ALMON, J., not sitting.

and reflects the efforts of the jury commission. As officially reported to the Court on December 20, 1968, the percentage of non-whites on the Marengo County jury rolls exceeds 35%, as compared with the 29% in September 1968. This higher percentage is not such a 'marked variation' to support a finding of systematic exclusion."

The report of December 20, 1968 was relevant to period September-December, 1968. Gibbs was indicted April 24, 1968.