21 So.2d 553

**LAYNE v. STATE.**

6 Div. 89.

Court of Appeals of Alabama.

Feb. 13, 1945.

Rehearing Denied Feb. 27, 1945.

Wm. Conway, of Birmingham, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Chas. M. Cooper, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

There is no dispute, or conflict in the evidence as to the crimes of burglary and grand larceny, as charged in the indictment having been committed, and likewise that one Donald Stinson was the perpetrator. It was the theory and contention of the State that this appellant Louis Edgar Layne, was a conspirator, or accomplice in the crime complained of, and he was separately indicted, upon which the trial of this case was based.

The State in order to sustain the indictment relied principally upon its evidence tending to support appellee's "Statement of Facts" as appears in brief. Said statement is substantially as follows:

"The combination filling station and cafe operated by Mr. and Mrs. Hershell Cross located in Birmingham was burglarized one night in August, 1943. Two pistols, a shotgun, and other property, all belonging to Cross, were stolen from a cabinet inside the establishment. Some of the property was recovered subsequently by a city detective with the assistance of one Donald Stinson, the admitted thief.

"The evidence for the State tended to show further that on the night in question Appellant's automobile was parked across the street from the filling station at the time the Crosses locked up for the night; that Appellant was in or around his car so parked at the time of the burglary; that R. F. Naramore, who lived nearby, came upon the scene, saw the automobile with Appellant in it and heard the car's horn blow at least three times, immediately after which he heard a 'racket at the filling station' which he investigated; that Naramore saw 'a fellow coming out of the window' of the filling station whom he identified as Donald Stinson. Stinson ran away from

the filling station and the automobile and did not return; Naramore had the police summoned and waited behind a hedge watching the automobile until they arrived; Appellant prior to the arrival of the officers had the door of the car open and he was looking up and down the street; that Appellant was trying to start the car when the police went over to him from the filling station and got him out of the car. Appellant was arrested and carried to jail. His car was towed off by the city's wrecker.

"Donald Stinson was apprehended by State's witness Weir, a city detective, on the day after the crime. Stinson told Weir where the property could be recovered. At the jail Appellant, in the presence of Weir, was accused by Stinson of participation in the crime and Appellant did not deny it.

"The only evidence for Appellant was his own testimony. It was substantially to the effect that he and Donald Stinson had been together practically all of the day of the burglary; that early in the evening he drove alone to a tourist camp on the Jasper Road, drank some beer, and drove back to the vicinity of the burglarized filling station where his car stalled; that he was working on his car trying to get it to start and did not know anything about the burglary; that he did not blow the car's horn and that he was an innocent bystander. He also claimed that he denied any participation in the offense when accused by Stinson at the jail."

The "Statement of Facts" in appellant's brief presents his version of what occurred during the trial as to the facts of the case. This statement is also quoted and is as follows:

"The prosecutor sought to prove by the witnesses for the State, that Donald Stinson broke into a filling station in the night being located at 2201 North 16th street in the City of Birmingham, Alabama, and stole therefrom some pistols, shot guns, and other property, and that appellant was his accomplice in this; that appellant had a car parked across the street from the filling station for the purpose of carrying away the loot or to warn Donald Stinson in the event anyone approached the place, that is to say; as a 'look out,' and that appellant tooted his horn as the warning signal when state witness Naramore went to the filling station for the purpose of getting a pitcher of water.

"After the filling station had been burglarized by Donald Stinson the loot was recovered by the police officers from Donald Stinson who was also indicted by the grand jury for the same offense.

"Appellant was arrested on the same night of the burglary, however, Donald Stinson escaped and was arrested several days later. Witness Naramore saw Donald Stinson run from the filling station and immediately called police officers who arrived at the filling station a few minutes later and arrested appellant who then and there denied any connection with the burglary and denied any participation therein and that his reason for being on the public street at that time and place was that his automobile had become stalled, and that he was endeavoring to get it started. When Donald Stinson ran from the filling station he ran in a direction away from the place where appellant was parked.

"None of the property alleged to have been stolen was recovered from Appellant and the prosecution is based solely on the contention that appellant was in the automobile with the intention of giving aid, warning or assistance to Donald Stinson in the commission of the offense.

"Donald Stinson made a confession and signed a statement at the city jail confessing his guilty participation in the burglary, and the state contends that said statement implicated appellant. What the statement was, and the details thereof was not introduced in evidence, however, the State contends that Donald Stinson made a statement to the officers in the presence of appellant which implicated appellant and that the statement was not denied by appellant, what the statement was, was never proven and appellant contends that he denied to the officers in the presence of Donald Stinson that the statement by Donald Stinson was not true, and denied at all times that he had participated in the burglary in any manner.

"Appellant contends that he was entitled to the general charge duly requested in writing and denied by the trial court.

"The Court was in error in permitting the police officers to testify that Donald Stinson made a statement in the presence of appellant at the city jail implicating appellant in the burglary and which statement was denied by appellant, and that there was manifest error, in that, the con-

tents of the statement was not proven, and it was not shown what the purported statement was; and the trial court gave undue prominence to said statement in his oral charge to the jury, exceptions being reserved thereto as shown by the record.

"Appellant further says that the solicitor made improper arguments to the jury which poisonous effect was not and could not be eradicated by any instructions by the learned trial court, for example, 'This defendant wanted to whip Naramore for pointing him out to the police, a man like this defendant would cut your throat if you testified against him,' (Donald Stinson did not testify).

"A motion for mistrial was made on account of said argument which was overruled and denied by the trial court.

"This record shows a proper motion for a new trial, raising all questions presented by this appeal which motion was by the Court overruled and denied, due exception reserved to the ruling thereon, and this is an appeal from the jury's verdict of conviction, the Court's judgment and sentence based thereon, and also an appeal from the judgment and order overruling the motion for a new trial. The record shows this appeal was perfected in every detail to meet the requirements of the Statute and Supreme Court Rule 48. Appellant is entitled to have this cause reviewed without assignments of error, and is entitled to a reversal if there is manifest error appearing in the record, even though not raised or argued by counsel."

■ It will be noted that on each and every portion of the testimony of an incriminating tendency, there appears conflict and dispute. All this presented questions for the determination of the jury. We therefore cannot accord to the earnest insistence of appellant's counsel that error prevailed in the action of the court in overruling and denying defendant's motion to exclude the testimony, which motion, as appears, was based upon the ground "the State has not made out a case under either aspect of the indictment."

■■ Under the laws of this State, as has been many times announced and declared, one who aids and abets in the commission of a felony is equally guilty as a principal. But, in order to authorize a conviction as an aider or abettor, there must be prearrangement, or on the spur of the moment, a common enterprise or adventure and a criminal offense contemplated. In such a case each is a conspirator, and, if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, abetting, or assisting the active perpetrator in the commission of the offense, is a guilty participant. This guilty participation need not be proved by positive testimony, and rarely is.

Upon the trial numerous exceptions were reserved to the rulings of the court, and it appears that substantially every point of decision thus involved was made and presented as grounds upon which defendant's motion for a new trial was based. A number of these questions need no discussion as there is clearly no merit in such insistences.

■ It affirmatively appears from the record, and about which there is no dispute, that the two defendants were well known to each other and were in frequent if not constant association with each other. This appellant Layne himself testified, that on the very same day the admitted crime of burglary and grand larceny was committed that night, Stinson came to his, Layne's house, early that morning and helped him work on his car. That later in the day, the two were walking together in town (Birmingham) to where defendant had parked his car, at about 12:30 o'clock and they remained together until "5 to 7 o'clock that night," and the defendant left Stinson and drove alone into the country to a tourist camp, and after spending some time drinking beer at the tourist camp, he started on his way home, the car stalled, the motor quit running and he pulled to the side of the road, immediately opposite and across from the filling station which was burglarized, and remained there at the very time Stinson broke into the filling station, etc. In effect, as to this, we are asked to hold that it was a mere coincidence, that these two defendants just happened to be at the same place at the same time after the space of about three hours since they had separated, and after this man had travelled many miles in his car. This court cannot accord to this insistence. It was clearly a question for the jury to determine whether their presence at the burglarized building was a mere coincidence, or was the result of concert of action between these two accused parties.

■ Witness Naramore, who lived adjacent to the Cross cafe and filling station, and who, so far as the record discloses, was a disinterested witness, went toward the filling station with a vessel in which to get some water, and evidently surprised Stinson who was inside at that time. This defendant, said Naramore, was sitting in his car, with the car door open, and tooted his horn evidently as a warning to Stinson who then and there jumped out of the window and ran off. Defendant's car would not start and the officers appeared upon the scene in about three minutes. Upon the trial this defendant testified he did not sound his car horn at all. This conflict was also for the jury to decide and not for this court.

■ State witness Weir, an officer of the City of Birmingham, arrested defendant Stinson on the next night after the crime was committed. He carried Stinson to jail, where Layne was already incarcerated. Witness Weir, among other things, testified:

"We sent for Layne to be brought down. They brought him in. Stinson was sitting on one side of the table, and I had a chair sitting on the right, and I says 'Have a seat, Mr. Layne.' Stinson looked at him and says 'Now,' he says, 'Layne, I just want to say this: I have made an admission to the whole thing. I have put it on paper and signed my name to it, and I want you to come clean and tell the truth about it just as it happened.' I have been with the officers, picked up the stuff and returned it to them, and told them the truth about just what happened, now I want you to tell the truth."

"Q. What reply did the defendant Layne give to that?" Ans. "He says, 'You say you have signed a statement?'" Stinson says: "I have." Layne said: "Well you are just a damn fool, these fellows will sink you, don't tell them nothing." As to the foregoing Layne on cross-examination in reply to the question:

"Do you remember when Stinson came down and talked to you in the jail and told you what he had done? A. Stinson didn't tell me what he had done. He said he had made a statement that he went into the place and burglarized the place.

"Q. Didn't he tell you 'Why don't you come across now and open up and tell the truth about it?' A. No, sir, he did not tell me that.

"Q. He did not tell you that you ought to tell the truth? A. No, sir.

"Q. And you didn't say to him 'You are a damn fool, these officers will sink you?' A. I don't know whether I said it or not."

Defendant interposed objections to the admission of this portion of Weir's testimony, and the principal ground thereof was that the defendant being in jail and under arrest at that time rendered the testimony illegal and incompetent. The trial court overruled the objection and defendant excepted. In this action of the court there was no error. In connection with above testimony the mere fact that defendant was under arrest and in jail at the time did not vitiate or render incompetent this testimony and especially so as it affirmatively appears there was nothing in connection therewith to show constraint or coercion, etc.

The exceptions to court's oral charge were not well taken. The oral charge of the court was able, comprehensive and fair. In addition thereto the court gave a number of written charges requested by defendant, some of which could have properly been refused.

The controversial and controlling fact in this case, i.e. whether or not this appellant was involved as coconspirator in the commission of the crime charged in the indictment was for the jury to determine.

We are of the opinion he was accorded a fair and impartial trial free from any error calculated to prejudice his substantial rights.

Affirmed.