198 So.2d 625

Gail FULLER

v.

STATE.

3 Div. 216.

Court of Appeals of Alabama.

Oct. 25, 1966.

634

Richmond M. Flowers, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Appellant was jointly indicted in three counts with two co-defendants for the robbery of Mrs. B. B. Anderson, 2379 Federal Drive, Montgomery, Alabama. Count No. 1 of the indictment charged that appellant robbed Mrs. Anderson of two ladies blouses of the value of $4.00 each; Count No. 2,.

Earl Gillian, Montgomery, for appellant.

that the defendants robbed Mrs. Anderson of one 1959 Ford automobile of the value of $900.00; and Count No. 3, that the property which was the subject matter of the robbery was one key ring containing three keys of the value of $1.30. Appellant requested and was granted a severance and was convicted by the trial jury under Count No. 2 of the indictment. This appeal is made from a judgment of the Circuit Court sentencing the appellant to a term of ten years in the State penitentiary in accordance with the verdict of the jury.

Appellant and several other prisoners at Kilby Prison escaped from a bean field at about 7:30 A.M. on June 22, 1965. Appellant was returned to custody at about 8:24 A.M. on the same date.

Evidence was introduced tending to prove that appellant did not participate in overpowering the prison guard which act allowed the escape of appellant and several other prisoners.

Testimony of appellant tended to show that after leaving the bean field he entered the woods and ran away from the prison. The other two prisoners who were indicted with appellant were Joe Myers and J. W. Allen. They were seen by appellant while he was still in the woods. Appellant asked them which way he was headed but they didn't know. Appellant later came to a clearing and he saw Joe Myers in the backyard of the house which they later entered. Myers said that he was going into the house and that J. W. Allen was already in there. After Myers went into the house, appellant waited a few minutes and then he entered. When appellant got inside the house, J. W. Allen had a shotgun in his hand. Mrs. Morgan, her daughter, and her mother, Mrs. B. B. Anderson, were sitting while Joe Myers was questioning Mrs. Morgan about keys to an automobile. Appellant testified to the following:

"Q. Did you say anything to those ladies?

"A. No. I did say—

"Q. Do you recall saying anything while being in the house?

"A. Well, the fact that he had a key to a car—I did say, let's get out of here."

Appellant denied having asked Mrs. Morgan, daughter of Mrs. Anderson, for clothes. She gave Joe Myers two blouses. Appellant denied having put on one of the blouses.

Mrs. Morgan testified that the first time she saw appellant he was coming through the kitchen and that another prisoner (apparently Joe Myers) was with him. J. W. Allen was already in the living room and was dressed in a guard's uniform, posing as a prison guard. Allen told Mrs. Morgan to "stay down and to stay in the living room" and that there had been a bad break and he was trying to get help from Kilby. When appellant and Joe Myers entered the living room, J. W. Allen then told Mrs. Morgan that he was a prisoner, not a guard. Appellant never said anything directly to Mrs. Morgan. Mrs. Morgan testified in part as follows:

"Q. Well, all right. What happened when another man that was with Fuller —when they came in—where did they go?

"A. Well, they came on into the bar—

"Q. Came into the where?

"A. They came through the bar. We have a bar that separates the living room from the kitchen. It is one big long room.

"Q. I see. Where did they go?

"A. Well, they came into the living room there and from that they wanted clothing and they wanted the car keys and tried to get away and they jerked the telephone out of the wall—

\*　　\*　　\*　　\*　　\*　　\*

"Q. Well, what did he do when he got off the phone?

"A. Well, he put the shotgun—he threw the shotgun on us and told us to sit down and give them time to get away and so then my daughter was behind me and I grabbed her—

"Q. Well, let me ask you a few questions right there on that point. Which one of them had the shotgun?

"A. Allen.

"Q. Allen was the one who was on the telephone.

"A. Yes.

"Q. Did he point the shotgun at you?

"A. Yes, sir.

"Q. Did he point it at your mother?

"A. Yes.

"Q. Did he point it at anybody else in the room?

"A. Yes, my daughter was there.

"Q. All right. Was he the spokesman for the crowd?

"A. This one and Myers did most of the talking.

"Q. And this one was just standing around?

"A. Well, he kept insisting that they were losing too much time.

"Q. This defendant right here?

"A. Yes.

"Q. All right. After they put the shotgun on you you said that they demanded something. What was that, please?

"A. Well, they demanded the car keys. Myers picked up the car keys off the bar there.

*   *   *   *   *   *

"Q. What happened when they got ready to leave?

"A. When they got ready to leave, Myers went and got in the car and backed it up. This one here stood in the doorway and Allen held the shotgun on us and told us to give them five minutes to get away. He said that they needed five minutes.

"Q. Now, how did they make their exit?

"A. Well, in turn, whenever he backed the car up, then they all ran for it.

"Q. Myers and Fuller went out together.

"A. Well, yes. They went out.

*   *   *   *   *   *

"Q. Do you recall who backed up in the automobile?

"A. Myers, I believe. He took the keys and as I recall, Mr. Fuller stood in the doorway and Allen held the shotgun on us. That is the way they exited out.

"Q. Do you recall this man saying, 'Let's get out of here.'

"A. 'Let's get out of here. We are wasting too much time.'

"Q. To the best of your recollection, is that all he said?

"A. That's all I remember."

According to the testimony of Mrs. Betty Morgan, Joe Myers took the keys to the automobile and also took the blouses from her and handed one to appellant.

Appellant left the house with Myers and Allen, got in the automobile with them and "lay down" in the front seat. Joe Myers drove the automobile and J. W. Allen was in the back seat. Appellant testified:

"When I first went in the house the way it looked—the doors wasn't locked or nothing and the lady never told me to get out and there was no words passed, and when I walked in the house actually I figured that maybe the lady knew them and that they were friends of hers or something and they were discussing this car and when Joe backed the car up I went out and jumped in the front seat * * *"

Within minutes after leaving the house, the three prisoners were seen by a policeman. They were then chased by several policemen upon whom the prisoners opened fire and after which the policemen returned the fire. The prisoners were recaptured within a few miles of the house they left.

City Policeman Till was at the scene of the recapture and on cross-examination he testified that he could not remember whether or not appellant had on a woman's blouse. A group newspaper picture, which included the appellant and was made shortly after the apprehension, was introduced by appellant for the purpose of showing that appellant was not wearing a woman's blouse.

John W. Allen, one of the prisoners, testified, in part, as follows:

"Q. After you saw the defendant in the woods, when was the next time you saw him?

"A. He came in the house after I had already gone in, maybe ten minutes.

"Q. You had been in the house about ten minutes.

"A. That's right.

"Q. Did anybody come into the house with you or with him?

"A. No. He came in alone.

"Q. Was there another fellow already in the house?

"A. That's right.

"Q. What was his name?

"A. Joe Myers.

Joe Myers then testified in part as follows:

"Q. Is this where the escape took place?

"A. Yeah. That's where we left.

"Q. Did you take off with this defendant here?

"A. No.

\*　\*　\*　\*　\*　\*

"Q. After you had run and you went to Mrs. Morgan's house, when did you next see the defendant here?

"A. Well, J. W. went up to this first house and knocked on the door and he left that house and he went to another house to this Mrs. Morgan's house and when he got there he went inside the house and I was getting ready to leave the patch. I was behind the corn and when I got ready to leave the patch Gail walked up and he asked me, he said, 'What are you doing, man?' I told him that I was going to meet J. W.

\*　\*　\*　\*　\*　\*

"Q. Did you hear this defendant say anything during the time that he was there in the house?

"A. Yeah. The only thing he said though was, let's get out of here, or we are wasting time, or something or other.

"Q. Did he say anything to those ladies in that house?

"A. No."

There was evidence that appellant was present at the time and place the offense was committed; that appellant made the statement, "Let's get out of here", which could reasonably be construed as proof of his encouraging the other two prisoners to commit the offense and could equally be construed as a meeting of the minds of appellant and the other two prisoners to commit the offense in concert; that appellant attempted to make full use of the stolen car in his effort to escape; and that he was present adding numerical strength to the "gang" when the automobile keys were forcibly taken. Also there is testimony that appellant took from Joe Myers one of the blouses. One who is present, encouraging, abetting, or assisting the active perpetrator in the commission of the offense is a guilty participant. This guilty participation need not be proved by positive testimony, and rarely is. The jury are to determine its existence from the facts in the case. West v. State, 25 Ala.App. 492, 149 So. 354. In

the case at bar the common enterprise or adventure engaged in by the three prisoners was to gain their freedom from Kilby Prison. To do this, they committed the high crime of robbery. It is sufficient if the common enterprise or adventure was entered into on the spur of the moment. Layne v. State, 32 Ala.App. 34, 21 So.2d 553.

■ The conflict in the evidence presents a question for the jury as to appellant's guilt. Williams v. State, 26 Ala.App. 555, 163 So. 463. In Gable v. State, 31 Ala.App. 280, 15 So.2d 594, cert. den. 245 Ala. 53, 15 So.2d 600, cert. den. 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562, defendants had been convicted of robbery. The defendant's contention was that the alleged robbery was committed by and with the consent of the victim who had prearranged with defendants that a fake holdup be made. The court held that the question of guilt was one of fact for the jury to determine.

■ The following written instruction was given at the request of the State:

"I charge you that if a man assists another or encourages another by his presence—that is, if he does it consciously, knowingly, purposely, with the knowledge that the other man understands that he is there as an encourager, under these circumstances, he is an accomplice, although he does not lift a hand."

In Eaton v. State, 8 Ala.App. 136, 63 So. 41, substantially the same charge was approved.

■ The following written requested charge of appellant was refused:

"I charge you, Gentlemen of the Jury, that each and every one of you must be convinced beyond all reasonable doubt of the defendant's guilt before you can convict him."

It was properly refused for the reason that it was not hypothesized upon belief from the evidence. Nix v. State, 41 Ala. App. 37, 126 So.2d 121, cert. den. 271 Ala. 628, 126 So.2d 123.

The court in its oral charge stated that the verdict must be unanimous.

Therefore, for these two reasons, refusal of the above charge is not error.

■ The following written charge was requested by the State and given by the court:

"It is the law of Alabama in felony cases, and by felony cases the law means an offense against the criminal law which is punishable capitally or by imprisonment in the penitentiary, so in felony cases all parties who are concerned in the commission of the felony, whether they directly commit the act constituting the felony, or aid and abet in its commission, are held to be equally responsible; so that whether a party commits by himself the entire act which constitutes a felony, or if he is concerned with another in its commission, if he aids another in its commission, if he assists another in its commission by word or deed, either by words of encouragement, assistance, or support, or by actions giving encouragement, assistance, or support, either party under these circumstances would in the eyes of the law be held to be equally responsible; that is, so far as the personal guilt or innocence is concerned."

This charge was approved in Ware v. State, 12 Ala.App. 101, 67 So. 763.

■ Appellant's requested charge No. 3 in substance related to reasonable doubt and the necessity of an unanimous verdict. A charge on reasonable doubt was fairly and substantially given in the court's oral charge. Therefore, there was no error in refusing to give charge No 3. Morris v. State, 252 Ala. 607, 42 So.2d 600; Kemp v. State, 278 Ala. 637, 179 So.2d 762.

■ Refused Charge No. 4 stated:

"I charge you, Gentlemen of the Jury, that you must find the defendant not guilty, if the conduct of the defendant upon a reasonable hypothesis is consistent with his innocence."

This charge is misleading and was hypothesized upon "belief from the evidence" and was properly refused. Nix v. State, supra.

■ Refused Charges Nos. 5 and 7 state:

"5. If you have a reasonable doubt of the defendant's guilt growing out of the evidence or any part of it, you must acquit him.

\* \* \* \* \* \*

"7. I charge you, Gentlemen of the Jury, that if you have a reasonable doubt of the defendant's guilt growing out of the evidence or any part of it, you must acquit him."

A charge on reasonable doubt was fairly and substantially given in the court's oral charge. Given Charge No. 6 which was requested by appellant states fairly and substantially the same thing as Charges Nos. 5 and 7. The refusal to give Charges Nos. 5 and 7 was without error. Dobbins v. State, 274 Ala. 524, 149 So.2d 814. Code 1940, Tit. 7, Sec. 273.

■ Refused Charge No. 9 stated:

"I charge you, Gentlemen of the Jury, that after considering all the evidence in the case if you have a reasonable doubt of the truthfulness of the evidence of the witness for the prosecution, you cannot convict the defendant."

This charge is misleading and incorrect; misleading, because it is not clear as to which one of the four witnesses for the State it refers to or whether it refers to all four witnesses; incorrect, because even if the testimony of the State's witnesses was disregarded there would probably be sufficient evidence for a conviction from the testimony given by appellant and two of his witnesses, J. W. Allen and Joe Myers.

■ Refused Charge No. 8 stated:

"The Court charges the Jury, that, if after considering all the evidence in the case you do not have an abiding convic-tion of the truth of the charge against the defendant as set forth in the indictment, and unless you are convinced beyond a reasonable doubt that the defendant is guilty of the matters set forth in the indictment, then it is your duty to acquit the defendant."

This charge was fairly and substantially covered by the court's oral charge and given charges numbered 1 and 6. Therefore, the charge was properly refused.

■ Refused Charge No. 14 stated:

"I charge you, Gentlemen of the Jury, that throughout the trial the defendant is presumed innocent, and that before you can find the defendant guilty you and each of you must be convinced of the defendant's guilt beyond a reasonable doubt and to a moral certainty."

This charge upon presumption of innocence was fairly and substantially given in Charge No. 17 which was requested by appellant and by the court's oral charge. Therefore, the charge was properly refused.

■ Refused Charge No. 13 stated:

"I charge you, Gentlemen of the Jury, that all twelve of you must be convinced beyond a reasonable doubt of the defendant's guilt."

The court in its oral charge stated that the verdict of the jury must be unanimous. Therefore, this charge was properly refused.

■ Refused Charge No. 11 stated:

"The Court charges the Jury, if after considering all the evidence in the case, that tending to show guilt, together with that tending to show innocence, there should spring up involuntarily in the minds of the jury, from any part of the evidence, a probability of innocence of the defendant, the jury must find the defendant not guilty."

This charge in substance is upon reasonable doubt which was fairly and substantial-

ly covered in the court's oral charge. Therefore, the charge was properly refused.

■ Refused Charge No. 15 stated:

"I charge you, Gentlemen of the Jury, that if the evidence is not so convincing as to lead the minds of you to the conclusion that he is guilty, you must find him not guilty."

The charge is incorrect because before the jury is authorized to acquit appellant they cannot be convinced beyond a reasonable doubt of his guilt. The charge is also misleading and, therefore, the charge was properly refused.

Some of the charges requested by the appellant used the expression "guilty" without differentiating between the different counts of the indictment.

The other claims of error by the appellant are without merit.

This cause is due to be and the same is hereby

Affirmed.