Sale of marijuana; sentence: three years imprisonment.
Around 9:50 p.m., on November 22, 1977, at a local bar in Opelika, Ken Ward, a police informer and supposed friend of the appellant, and William Batson, an undercover narcotics agent, discussed with the appellant the sale of some marijuana. Batson and Ward were together for the purpose of locating "sellers" and making purchases in order to later prosecute them. Although the evidence is in conflict as to who initially approached the appellant regarding the possibility of making a marijuana purchase, it is clear that the three left the bar, drove around and smoked some marijuana, and returned. Around 10:30 that evening, Batson and Ward went to the appellant's house, bought some marijuana, and left. On March 8, 1978, the appellant was arrested for selling marijuana in violation of § 20-2-70, Code of Ala. 1975. *Page 1113 
Appellant contends that the trial court erred in instructing the jury on the law concerning conspiracy in that a conspiracy is a separate crime not charged in his indictment. He further asserts that the evidence is insufficient to support an inference of the crime of conspiracy.
Agent Batson testified that on November 22, he was introduced to the appellant by Ward. Shortly thereafter Ward inquired as to the possibility of buying some marijuana from the appellant. The appellant indicated that he had a sample of some with him. Then all three got into appellant's car, drove around, and sampled it. Batson testified that he simulated smoking the marijuana by not inhaling the smoke. Afterward, when they returned to the bar, Batson asked the appellant if he could purchase some of it. The appellant told him that he had some marijuana at his house and to meet him there. Later, on the same evening, Batson, Ward, and the appellant entered the appellant's house. The appellant's wife and child were present. Batson testified that all three went into the kitchen where Mrs. Kendrick was, and the appellant removed the marijuana from a grocery sack in a cabinet, weighed an ounce on a set of scales, put it into a plastic bag, and gave it to him. Batson then paid the appellant $20 and left. He subsequently turned the substance over to Detective Brock of the Opelika Police Narcotics Division who in turn gave it to the State Toxicology Department for analysis. Their analysis concluded the substance to be marijuana.
Ken Ward's testimony was substantially the same as that of Batson with the exception of the actual sale. He stated that Batson stayed in the living room while the appellant and he went into the kitchen. Although Ward's testimony becomes sketchy, it indicates that Mrs. Kendrick removed some marijuana from a container on top of the refrigerator and handed it to him. It appears that Agent Batson had entered the kitchen by this time, and Ward examined the marijuana for a moment and then handed it to Batson. Ward said Agent Batson then paid Mrs. Kendrick $20.
Jean Hunt testified for the appellant and stated that she was in the kitchen of the appellant's residence when the appellant, Batson, and Ward entered the house. She testified that the appellant, appearing intoxicated, began to argue with his wife. The witness left the kitchen and sat in the living room with Agent Batson. Furthermore, Mrs. Hunt testified that immediately before she left the Kendrick home, she looked in the kitchen and saw Mrs. Kendrick removing a bowl-like object from atop the refrigerator.
The appellant's wife, Gretchen Kendrick, testified that on November 22, her husband and two men, one being Ken Ward, entered their house. She recounted the argument between the appellant and herself. She said the appellant told her Ward needed some marijuana, and he was going to give him some. Mrs. Kendrick, however, stated that she would handle it herself because the appellant was drunk. She testified to removing the marijuana from a crock pot atop the refrigerator, separating a portion, placing it in a plastic bag, and handing it to Ward. Furthermore, she testified that after giving the marijuana to Ward and turning to the oven to check her baking she saw Agent Batson in the kitchen holding $20 which she took.
The appellant took the stand and gave his rendition of the circumstances surrounding his meeting Agent Batson and Ward. He admitted that upon arriving at their house his wife and he argued over some family matters. He then told her to get some marijuana for Ward, and she complied. It was kept in a crock pot atop the refrigerator. He did not mention any money being exchanged.
 I
Whether directly committing the act constituting the offense or aiding and abetting in its commission, all persons concerned in the commission of a felony must be indicted, tried, and punished as principals. Section 13-9-1, Code of Ala. 1975. *Page 1114 
As the Alabama Supreme Court stated in Stokely v. State,254 Ala. 534, 541, 49 So.2d 284 (1951), one indicted as the actual perpetrator of a crime may be convicted of such upon proof of a conspiracy although not charged with such. See also: Watkins v.State, Ala.Cr.App., 357 So.2d 156, cert. denied, Ala.,357 So.2d 161 (1978).
 "Joint participants in a crime may be denominated `conspirators' and a joint act or scheme may be called a `conspiracy' since these words do not lose all their ordinary meaning and content merely because there exists a separate crime of conspiracy. . . ."
Smith v. State, Ala.Cr.App., 368 So.2d 298, cert. denied, Ala.,368 So.2d 305 (1978). See also: United States v. Snyder (5th Cir.), 505 F.2d 595, cert. denied, 420 U.S. 993, 95 S.Ct. 1433,43 L.Ed.2d 676 (1974).
Thus, the term "conspiracy" has a meaning in our case law separate and apart from the statutory offenses of conspiracy set out in §§ 13-9-20, -21, -22, -24, Code of Ala. 1975. The State is not limited to § 13-9-20, et seq., in prosecuting joint perpetrators of crimes. The accomplice statute, § 13-9-1, supra, provides for punishing persons aiding and abetting in a crime, and their joint complicity may be referred to in terms of "conspiring" or as a "conspiracy." Smith, supra. Consequently, one need not be charged as an aider and abettor to be tried as one. Yeloushan v. United States (5th Cir.),339 F.2d 533 (1964). Therefore, appellant's first contention is without merit.
 II
The evidence adduced at trial clearly supported the trial court's charge on conspiracy. Under our law concerning conspiracy, it has been stated that a common enterprise or adventure may be entered into on the spur of the moment without prearrangement and with no particular acts necessary. Radke v.State, 292 Ala. 290, 293 So.2d 314 (1974); Smith v. State,57 Ala. App. 151, 326 So.2d 680, cert. denied, 295 Ala. 419,326 So.2d 686 (1975); Fuller v. State, 43 Ala. App. 632,198 So.2d 625 (1966).
Here, the evidence indicated that both the appellant and his wife participated in the sale of the marijuana. Even the testimony of the appellant and his wife indicates that he directed her to get the marijuana. She separated a portion for either Ward or Batson. The appellant stated that Ward handed it to Batson. He in turn paid Mrs. Kendrick. She admitted receiving the $20. It was reasonable under those facts for the jury to infer a concert of action or community of purpose between the appellant and his wife. As we stated in Knight v.State, 50 Ala. App. 457, 280 So.2d 163 (1973):
 ". . . Such community of purpose or conspiracy need not be proved by positive testimony. It rarely is so proved. The jury is to determine whether it exists and the extent of it, from the conduct of the parties and all the testimony adduced. . . ."
AFFIRMED.
All the Judges concur.