[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 896 
The appellant was convicted of attempted murder and sentenced to 35 years' imprisonment in the State penitentiary. He was further ordered to pay a $10,000 fine.
The record indicates that the victim, Earl Couch, who was 67 years old at the time of the offense, testified, through the use of a video taped statement taken at a preliminary hearing, that on the morning in question, the appellant's accomplice knocked on the victim's door and asked to borrow some sugar. The victim testified that the accomplice had been a frequent visitor and that he invited the accomplice into his home. Subsequently, the appellant came to the victim's door, and his accomplice let him in. The victim stated that the appellant had also been in his home on several occasions. He stated that the three of them sat at his dining room table, having a casual conversation. The appellant was sitting across the table. Suddenly, the accomplice hit the victim on the forehead with his right hand. The victim lost consciousness. He stated that he next remembers hearing the telephone ringing and seeing blood all over the floor. His eyeglasses were lying on the floor, with no lenses in them. He was able to drive himself to the emergency room at the hospital. He stated that, since the incident, he has been unable to take care of himself.
The victim also identified a check, which was drawn on his account and signed with a signature purported to be his own. However, the victim stated that he had never signed the check, nor had he authorized anyone to sign the check on his behalf. He identified another check similarly signed and also testified that he had neither signed the check, nor authorized anyone to sign it. He stated that the checks had been stolen and that he had requested the bank to place a stop payment order on the checks contained in the checkbook from which they came.
The State also presented the testimony at trial of a physician, specializing in pulmonary disease, who had examined the victim prior to the offense, that at the time of that examination the victim had been able to get around and take care of himself. The physician testified that when he observed the victim after the offense, he was so grotesquely swollen that the physician initially believed that he was at the wrong patient's bed. He testified that, following the offense, the victim was evaluated for trauma to his head and it was determined that he had suffered a blood clot on his brain, as well as bruising on his brain due to a beating or an assault. He testified that the victim's skull was fractured and that he had multiple lacerations and torn skin over his body, especially in the area of his face and arms. At the time of trial, the victim had been diagnosed as having a seizure disorder, and the record indicates that prior to sentencing the victim had suffered a seizure, lapsed into a coma, and died.
The State also introduced into evidence a video taped confession by the appellant in which he stated that he and his accomplice had decided to go to the victim's house and kill him so that they would not have to worry about being caught with the previously stolen checks. He stated that they planned on killing the victim by beating him up with their fists. He stated that when he and his accomplice left the victim's house, after the beating, they believed the victim to be dead. He stated that as they walked down the street from the victim's house they discussed whether he was dead and whether they would be caught.
 I
The appellant argues that the trial court erred in denying him youthful offender status. The appellant bases his argument on the fact that the evidence presented at his hearing for youthful offender status revealed that he was 18 years old at the time of the offense; that he had never been arrested before; that he was of lower than average intelligence; that he was easily led and was characterized as a follower; and *Page 897 
that he had never personally struck the victim in the case. The appellant further alleges that the trial court's reasons for refusing the youthful offender treatment were that it believed the appellant to have a "wily" nature and that the appellant had given different versions of the offense. Thus, the appellant argues that the trial court's decision was arbitrary.
The record reveals that the hearing on the appellant's motion for youthful offender status took place over a five-day period and included the testimony of 12 witnesses, 7 of which were witnesses for the appellant. Thereafter, the trial court denied the appellant's youthful offender status; stating the case action summary:
 "The court, having considered all factors due consideration under the Youthful Offender Act and having thereupon determined that youthful offender status is inappropriate, the court DENIES the petition for treatment as a youthful offender."
Thereafter, the appellant filed a motion to reconsider the decision on youthful offender status, and the trial court again denied the motion, stating:
 ". . . I have thought long and hard about the youthful offender treatment and when I consider all the areas and factors that would determine whether or not it's appropriate I just don't see that it's designed for this particular defendant and this particular offense. And accordingly, youthful offender treatment is denied."
The trial court indicated that it considered all of the evidence presented before making its decision. He stated, following the hearing on the appellant's motion, that "I've gotten to know [the appellant] pretty well through these hearings and he has seemed quite wily and he's one of the less forthright witnesses that I've seen." There is no indication that the trial court's decision was arbitrary. A trial court is not required to state its reasons for denying youthful offender status, as long as there is an indication that the statutory requirements of investigation and examination were met.Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045,16 L.Ed.2d 84 (1966). "Almost absolute discretion is vested in the trial judge by the Youthful Offender Act to grant or deny youthful offender status after an appropriate investigation is conducted." Fairchild v. State, 505 So.2d 1265, 1268
(Ala.Cr.App. 1986) (citing Morgan v. State,363 So.2d 1013, 1015 (Ala.Cr.App. 1978)). Moreover, much of the necessity of such discretion being vested in the trial judge lies in the fact that it is he who has the opportunity to "personally observe the youth." McClendon v. State, 341 So.2d 174,175 (Ala.Crim.App. 1976), cert. quashed, 341 So.2d 178 (Ala. 1977). Thus, the trial judge's personal observation of the youth may properly be a factor in his ultimate determination concerning the request for youthful offender status. We find no indication of abuse of discretion by the trial court in this matter.
 II
The appellant argues that the trial court erred in admitting his statement into evidence, because the statement was involuntary. Moreover, the appellant argues that the trial court erred in telling the jury that the issue of voluntariness had been ruled on.
The evidence presented at trial concerning the voluntariness of the appellant's confession was conflicting. The appellant presented evidence that he was "scared to death" and that his uncle, who was present at the police annex when the appellant was being interrogated, overheard the interrogating officer yelling and cursing at the appellant and making such statements as, "[I]f I get a chance, I'm going to fry these little bastards." The appellant's uncle further testified that the appellant was upset and crying. He also testified that the officer "was going back and forth" between the appellant and his accomplice, and yelling at the appellant that "you need to tell us the truth." Thereafter, the appellant's uncle stated that the officer told the appellant that his accomplice was "spilling his guts" and blaming everything on the appellant, *Page 898 
so that he had better tell the truth.[1] The appellant's uncle then testified that he went to the appellant and told him that he needed to tell the truth. He stated that the appellant then began to admit his role in the series of events.
The State presented the testimony of the interrogating officer who stated that the appellant was neither hysterical nor crying during the interrogation. He testified that he did not harass or curse at the appellant. The interrogating officer denied ever saying that he was going to "fry these little bastards." He testified that he had probably positioned the appellant and his accomplice so that they were face-to-face in the interrogating room, but stated that this was not until the interviews were completed and was in the course of filling out forms necessary to book them into jail. A detective, who was also present at the police annex when the appellant was questioned, testified that he never heard any profanity used toward the appellant and that he never heard the interrogating officer make a threatening statement. He further testified that the appellant was never harassed or threatened in his presence and that the appellant was not crying. He stated that the appellant appeared to be rational and coherent at the time of questioning. He testified that, just prior to the appellant's making the incriminating statement, the officers told the appellant that "we [the officers] wanted the truth." He further stated:
 "We wanted the truth as to the motive for them going down to that house. And we discussed that with him. We did not promise him anything. All we did was go in there and tell him that [the accomplice] had confessed. We knew why they had gone down there and we felt like he was not telling us the whole truth and we wanted to hear it from him, if he wanted to amend his statement at that time."
This Court has stated:
 "The fundamental requirements for voluntariness of confessions are that the court must conclude, in order to find a defendant's confession voluntary, that he made an independent and informed choice of his own free will, that he possessed the capacity to do so, and that his will was not overborne by pressures and circumstances swirling around him. Jurek v. Estelle, 623 F.2d 929 (5th Cir. 1980) (en banc), cert. denied, 450 U.S. 1001, [101 S.Ct. 1709, 68 L.Ed.2d 203] (1981); Lewis v. State
[535 So.2d 228 (Ala.Cr.App. 1988)]. The test is whether, considering the totality of the circumstances, law enforcement officials have overborne the will of the accused. Haynes v. Washington, 373 U.S. 503 [83 S.Ct. 1336, 10 L.Ed.2d 513] (1963); Townsend v. Sain, 372 U.S. 293
[83 S.Ct. 745, 9 L.Ed.2d 770] (1963); Culombe v. Connecticut, 367 U.S. 568 [81 S.Ct. 1860, 6 L.Ed.2d 1037] (1961). The factual inquiry centers on the conduct of the law enforcement officials in creating pressure and the suspect's capacity to resist that pressure. Mincey v. Arizona, 437 U.S. 385 [98 S.Ct. 2408, 57 L.Ed.2d 290] (1978); Martin v. Wainwright, 770 F.2d 918 (11th Cir. 1985); Jurek v. Estelle."
Jackson v. State, 562 So.2d 1373, 1380 (Ala.Cr.App. 1990).
The finding of the trial court concerning a confession's voluntariness will not be disturbed on appeal unless it appears to be contrary to the great weight of the evidence or manifestly wrong. Magwood v. State, 494 So.2d 124
(Ala.Cr.App. 1985), affirmed, 494 So.2d 154 (Ala. 1986), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986).
 " 'Because the evidence concerning voluntariness was conflicting, great weight must be given to the trial court's judgment. Blackburn v. Alabama, 361 U.S. 199, 208, 80 S.Ct. 274, 281, 4 L.Ed.2d 242 (1960).' Sandifer v. State, 535 So.2d 203, 205 (Ala.Cr.App. 1987). *Page 899 
 " 'Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Chambers v. State, 455 So.2d 1008 (Ala.Cr.App. 1984); Bennett v. State, 409 So.2d 936 (Ala.Cr.App. 1981), cert. denied, 457 U.S. 1137 [102 S.Ct. 2968, 73 L.Ed.2d 1356] (1982). The trial court need only be convinced from a preponderance of the evidence to find a confession to have been voluntarily made. Ex parte McCary, [Ms. 86-1219, January 15, 1988] 528 So.2d 1133 (Ala. 1988); Ex parte Singleton
[465 So.2d 443 (Ala. 1985)].'
 "Bui v. State, [Ms. 3 Div. 557, April 12, 1988] 551 So.2d 1094, (Ala.Cr.App. 1988). Under the totality of the circumstances, '[t]his court is not convinced that the trial court's conclusion is palpably contrary to the great weight of the evidence and manifestly wrong, and the trial judge's finding will not be disturbed on appeal.' Sandifer v. State, supra, citing Harris v. State, 280 Ala. 468, 470-71, 195 So.2d 521 (1967)."
Wilson v. State, 571 So.2d 1237 (Ala.Cr.App. 1989).
The evidence presented by the appellant that the interrogating officer threatened and cursed the appellant clearly conflicted with the State's evidence, and that conflict was for the trial court to resolve. Furthermore, "[c]onfronting a defendant with evidence of guilt is not coercion on the part of the police and does not render a subsequent confession involuntary. Blackmon v. Blackledge, 541 F.2d 1070
(4th Cir. 1976); Williams v. Ohio, 547 F.2d 40 (6th Cir. 1976), cert. denied, 435 U.S. 998, [98 S.Ct. 1654,56 L.Ed.2d 88] (1978)." Jackson v. State, supra. Moreover, an exhortation to an accused to tell the truth does not imply a promise or inducement. Jackson v. State, supra; Eakes v. State, 387 So.2d 855 (Ala.Cr.App. 1978). We find no abuse of discretion by the trial court in its determination that the appellant's confession was voluntarily made.
As to the appellant's contention that the trial court stated, in front of the jury, that the issue of voluntariness had been ruled on, any error by the trial court in making that statement was harmless. The following transpired during trial:
 "[DEFENSE COUNSEL]: Judge, I put the witness on, I'm sure as Your Honor knows, on the question of the voluntariness of the statement.
"THE COURT: I understand.
"[DEFENSE COUNSEL]: Exhibits 13 and 14.
 "THE COURT: I understand. But we've been through that in a motion before me. We've been through this entire series of witnesses and there has already been a ruling. If you want to put on this part of your case at this time I'll let you do it. But as I say I'm not going to restrict the district attorney from what would be your ordinary right of cross-examination if these witnesses were put on at the ordinary time in the course of defense.
 "[DEFENSE COUNSEL]: I understood Your Honor to rule yesterday afternoon that I could proceed on this issue.
 "THE COURT: You can. You can put them on in this issue, but they are going to be on for all purposes.
 "[DEFENSE COUNSEL]: We haven't started putting witnesses on in the defense, Judge. The State hasn't rested.
 "THE COURT: [DEFENSE COUNSEL], I'm not running your case. You asked me if you could put on this material and you certainly can put on this material. It is proper for the jury to consider. I've already made the ruling that's necessary for me to make which makes it likely that this issue will be considered by the jury. There's always a possibility of my changing my mind and there's always a possibility that the jury will take one view of the case or the other. So you can put these witnesses on at this time. But I view them basically as defense witnesses. *Page 900 
 "[DEFENSE COUNSEL]: Again, I ask Your Honor to allow me to have a hearing outside the presence of the jury on this issue."
(Emphasis added.) The jury was then excused, and the appellant moved for mistrial on the grounds that the trial court stated, in the jury's presence, that it had ruled on the voluntariness of the appellant's statements. The following transpired during that motion:
 "[DEFENSE COUNSEL]: . . . [W]hat I started out to say to Your Honor is I'm concerned that the jury should not even know that Your Honor has ruled on the motion. But Your Honor has stated in their presence a couple of times that you had so ruled. And I have to — in order to properly defend my client I have to move for a mistrial on that grounds, Judge. I don't think the jury should be told that. That's why we do it outside of the presence of this jury or the previous jury.
 "THE COURT: There's been no indication to the jury that I found the statement to have been sufficiently supported by evidence of voluntariness to go to the jury. The remarks on the procedural aspects of this case have been very cryptic and have been intentionally cryptic so that nothing would give the jury a clue of any factfinding by the Court so the motion is denied."
Because the trial court clearly informed the jury that they were to make the ultimate determination as to whether the confession was voluntary, any error in the trial court's statements was harmless. In Ex parte Singleton,465 So.2d 443, 446 (Ala. 1985), the defendant alleged that the trial court indicated to the jury that he had already determined that the defendant's confession was voluntary by stating:
 "Do you know yesterday when you were — the jury was out of here for a long period of time? It is incumbent upon the Court first to hear all of the testimony and first the Court must decide that it is a voluntary statement and that it is admissible into evidence. The Court first makes this determination, which I did, and I allowed the confession to be introduced. But, again, I am not the trier of the facts. You are. So then the burden is upon the State to show you that it was a 'voluntary statement.' . . ."
In determining that the defendant was not prejudiced by the trial court's comment to the jury concerning the voluntariness of the defendant's confession, the Alabama Supreme Court held:
 "It is improper for a trial judge to disclose to the jury that he made a preliminary determination that a confession was voluntary and, therefore, admissible. Clifton v. United States, 371 F.2d 354 (D.C. Cir. 1966), cert. denied, 386 U.S. 995, 87 S.Ct. 1312, 18 L.Ed.2d 341
(1967); United States v. Inman, 352 F.2d 954 (4th Cir. 1965). In the case at hand, however, the trial judge made it clear to the jury that they were to ultimately determine whether the confession was voluntary. We agree, therefore, with the Court of Criminal Appeals that there was no prejudicial error, since the comments of the trial judge 'did not imply that the jury should accept and believe appellant's confession based on the trial court's ruling that the statement was voluntary.' "
Id.
In the present case, the record indicates that the trial court properly instructed the jury that they were to make the ultimate determination as to whether the confession was voluntary. Therefore, the appellant was not prejudiced by the trial court's statements to the jury.
 III
The appellant argues that the trial court erred in allowing into evidence three exhibits: a forged check, a videotape of the victim's testimony, and photographs of the victim.
However, the check, made out to the appellant and bearing the victim's forged signature, was properly admitted, as it was relevant to prove the appellant's motive for the attempted murder. In his confession, the appellant indicated that he and his accomplice planned to murder the victim in order to avoid being caught for *Page 901 
having forged the checks taken from the victim.
 "The testimony of a witness, in a former trial or action, given (1) under oath, (2) before a tribunal or officer having by law the authority to take testimony and legally required an opportunity for cross-examination, (3) under circumstances affording the party against whom the witness was offered an opportunity to test his credibility by cross-examination and (4) given in a litigation in which the issues and parties were substantially the same as in the present cause, is receivable as evidence in the present trial (5) when the personal attendance of the witness to testify in the present trial is not feasible."
C. Gamble, McElroy's Alabama Evidence § 245.07(1) (3d ed. 1977).
In Robinson v. State, 528 So.2d 343, 347-48
(Ala.Cr.App. 1986), evidence of an alleged prior burglary committed by the defendant was admissible in a murder case in order to show motive.
 "In the case sub judice, the State's evidence clearly showed that the appellant was in great financial difficulty, as she was during the time of the alleged robbery. Her financial problems would appear to have been the motive behind her alleged 'faking' of the prior burglary. . . . 'Both federal and state courts frequently admit evidence of collateral crimes or acts to prove that the accused had a motive to commit the crime charged. The Fifth Circuit has allowed evidence of a defendant's lack of funds as providing a motive for robbery, [Gill v. United States, 285 F.2d 711, 713 (5th Cir. 1961), cert. denied, 373 U.S. 944, 83 S.Ct. 1554, 10 L.Ed.2d 699 (1963)], and in a recent case, the Ninth Circuit allowed evidence of heroin use showing a need for money and thus a motive to commit a robbery. In Alabama, evidence that a defendant who was on trial for murder had just committed an armed robbery was admissible to show that the defendant shot a police officer in order to save himself and his accomplice from punishment. [Vincent v. State, 231 Ala. 657, 660, 165 So. 844, 846 (1936).] In McGuire v. State, [401 So.2d 142 (Ala.Cr.App. 1981)], the court admitted evidence that the defendant had once said that he had robbed a particular person in his prosecution for murdering that person because it tended to show defendant's motive in killing the victim was to rob him of drugs.' Schroeder, Evidentiary Use in Criminal Cases of Collateral Crimes and Acts; A Comparison of the Federal Rules in Alabama Law, 35 Ala. L.Rev. 241, 259 (1984)."
Robinson v. State, supra, at 347-48. See also C. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed. 1977).
The videotaped testimony of the victim, which was recorded during a preliminary hearing, was properly admitted at trial, as the victim, who was hospitalized at the time of the hearing, was unavailable to testify. The appellant argues that the use of the videotape denied him of his right to fully cross-examine the victim. However, the record indicates that the appellant was represented by counsel at the preliminary hearing and that counsel was made aware that the testimony might be used at a future date during the appellant's trial. During the preliminary hearing, the appellant's counsel objected to any future use of the video tape because it would violate the appellant's Sixth Amendment right to confront witnesses.
 "In order that the testimony of a witness, given on a formal trial or proceeding, may be admissible, it is essential that the party against whom it is offered was given an opportunity to cross-examine the witness during the former trial or proceeding. . . .
 "It is not essential that the party actually cross-examine the witness at the formal trial or proceeding. His failure to exercise the right when afforded the opportunity does not exclude the former testimony. . . .
 "If the tribunal, on the former hearing, improperly restricted the right of the party to cross-examine, the former testimony of the witness clearly is inadmissible. *Page 902 
 "In the trial of a defendant for a crime, the testimony of a now-unavailable witness, given on a former trial of the defendant on the same charge, is not admissible upon the offer of the State in the present trial if the defendant was not represented by counsel on the former trial and if the defendant did not effectively waive his constitutional rights to the assistance of counsel on the former trial."
C. Gamble, McElroy's Alabama Evidence § 245.07(5) (3d ed. 1977).
The record indicates that, before the jury venire was qualified in the appellant's trial, a hearing was held in the trial judge's chambers in which the prosecutor indicated that the defense counsel had previously stated that he would stipulate to the fact that the victim was "unavailable" as that term is defined under the law, based on a letter provided from the victim's physician. The prosecutor stated that the defense counsel stipulated that the witness was unavailable "such that testimony from a prior proceeding which meets all the requirements under the opportunity to cross-examine" would be admissible in place of the victim's trial testimony. The prosecutor stated that if the appellant had changed his mind, she wanted the victim's physician to be subpoenaed to testify so that the trial court could determine whether or not the victim was unavailable. Defense counsel replied that he unquestionably had stipulated to the fact that the victim was unavailable to testify because he was in the hospital, but defense counsel objected to the introduction of the videotape from the preliminary hearing on the grounds that if the examination had been conducted during a jury trial, he might have asked other questions or cross-examined in another manner. Defense counsel acknowledged that the prosecutor had telephoned him, prior to videotaping the victim's testimony at the preliminary hearing, and that defense counsel had consented to the taping. However, defense counsel argued that he did not consent to its use at a future time.
Other jurisdictions have held videotaped testimony of an unavailable witness in a criminal trial admissible under certain "exceptional" circumstances: where the witness is unavailable; where the videotape is made under the supervision of the proper judicial authority and with the defendant present; where the defendant is given his fair rights to cross-examine the witness; and where the videotape is sufficiently clear that the jury is able to observe the witness's demeanor. State v. Jeffries, 55 N.Car.App. 269, 285 S.E.2d 307, app. den., 305 N.C. 398, 290 S.E.2d 367
(1982). See also People v. Wilson, 112 A.D.2d 746,492 N.Y.S.2d 242, app. den., 66 N.Y.2d 768, 497 N.Y.S.2d 1043,488 N.E.2d 129 (1985).
In the present case, there is no question that the victim was unavailable to testify at trial. Moreover, there is no question that the testimony was taken at a preliminary hearing before a district judge, and that the victim was testifying under oath. A transcript of the victim's prior testimony is included in the record on appeal and shows that the victim was extensively cross-examined by the appellant's counsel. Therefore, the videotape was properly admitted into evidence.
The appellant also argues that "photographs of this beaten and injured elderly man were highly prejudicial." He argues that the photographs served little purpose, other than to arouse the jury's sympathy. However, the extent and severity of the victim's injuries were relevant as tending to prove that an attempted murder had occurred, rather than an assault. Moreover, the injuries were relevant to prove that the appellant had intended to murder the victim.
" 'The fact that a photo is gruesome and ghastly, if it has some relevancy to the proceeding, is no reason to exclude its admission into evidence, even if the photograph may tend to inflame the jury.' Warrick v. State, 460 So.2d 320,323 (Ala.Cr.App. 1984), and cases cited therein." Hill v.State, 516 So.2d 876, 881 (Ala.Cr.App. 1987).
 "Photographic evidence has been readily held admissible if it has 'a reasonable tendency to prove or disprove some material fact in issue.' C. Gamble, McElroy's *Page 903 Alabama Evidence (3d ed. 1977) § 207.01(2); Woods v. State, 460 So.2d 291
(Ala.Cr.App. 1984); Blair v. State, 453 So.2d 1092 (Ala.Cr.App. 1984), Murry v. State, 453 So.2d 774 (Ala.Cr.App. 1984). Further, the decision to allow photographic evidence is within the sound discretion of the trial court, Barnes v. State, 445 So.2d 995 (Ala.Cr.App. 1984), and will be reviewed only to determine whether there has been an abuse of discretion. Holland v. State, 424 So.2d 1387 (Ala.Cr.App. 1982); Washington v. State, 415 So.2d 1175 (Ala.Cr.App. 1982). Additionally, gruesome, ghastly, and unsightly photographs are admissible in criminal prosecutions if they tend to illustrate the truth of other testimony. Smith v. State, 446 So.2d 68 (Ala.Cr.App. 1984); Jones v. State, 439 So.2d 776 (Ala.Cr.App. 1983); Mickens v. State, 428 So.2d 202
(Ala.Cr.App. 1983)."
Updyke v. State, 501 So.2d 566, 567 (Ala.Cr.App. 1986).
In the present case, the photographs were relevant, and the trial court did not abuse its discretion allowing them into evidence.
 IV
The appellant argues that the argument and conduct of the prosecutor at trial was improper and constitutes reversible error. The appellant cites a number of objections he made to the prosecutor's comments or questions, which were sustained by the trial court. The trial court instructed the prosecutor to limit his comments, after sustaining one of the defense counsel's objections. On another occasion, after sustaining the defense counsel's objection, the trial court instructed the jury that the evidence comes from the witnesses and that lawyers are not witnesses and cannot provide evidence. On another occasion, the trial court sustained the defense counsel's objection and instructed the jury that, "[w]hat the lawyers want, ladies and gentlemen, doesn't make any difference." On the two other occasions cited by the appellant, the trial court correctly overruled the defense counsel's objections.
The trial court gave sufficient and proper curative instructions where they were warranted to cure any prejudice to the appellant. Although the appellant argues that the trial court's curative instructions were insufficient, because he did not request any additional curative instructions, he cannot now complain on appeal. Lauderdale v. State, 555 So.2d 799
(Ala.Cr.App. 1989). Moreover, the prosecutor's conduct cited by the appellant did not result in such cumulative error as to deny the appellant of a fair trial. Harris v. State,513 So.2d 79, 82-83 (Ala.Cr.App. 1987).
 V
The appellant argues that the trial court erred in denying his motion for judgment of acquittal, because he alleges that the evidence presented was insufficient to support a jury verdict of guilty on the charge of attempted murder.
The State's evidence, including the appellant's statement and the victim's videotaped statement, presented sufficient evidence that the appellant committed the offense of attempted murder. Although the appellant contends that there was no proof that he actually participated in the beating, there was sufficient proof through his statement and that of the victim that he aided and abetted in the commission of the offense.
 " 'A conviction of one charged in the indictment with having been the actual perpetrator of a crime is authorized on proof of a conspiracy or that the accused aided or abetted in the commission of the crime. Stokley v. State, 254 Ala. 534, 49 So.2d 284 (1950). An aider or abettor may be indicted directly with the commission of the substantive crime and the charge may be supported by proof that he only aided and abetted in its commission. Pope v. State, 365 So.2d 369
(Ala.Cr.App. 1978).'
 "Any person who is present, encourages, aids, abets or assists another in any way, in the commission of a crime is equally as guilty as the one who directly commits the act, and the aider and abettor *Page 904 
must be indicted, tried and punished as a principal. Griffin v. State, 26 Ala. App. 292, 158 So. 773 (1935), Stokley, supra."
Pennington v. State, 421 So.2d 1361, 1362 (Ala.Cr.App. 1982). "Whether appellant is ultimately labeled a principal or an accessory is no longer of consequence in the law of Alabama. Section 13A-2-20, -23, Code of Alabama 1975; Stokley v.State, 254 Ala. 534, 49 So.2d 284 (1950); Kendrick v.State, Ala.Cr.App., 377 So.2d 1112, cert. denied, Ala.,377 So.2d 1114 (1979)." Craft v. State,402 So.2d 1078, 1079-80 (Ala.Cr.App.), cert. denied, 402 So.2d 1080 (Ala. 1981).
Where evidence raises a question of fact for the jury, such evidence, if believed, is sufficient to sustain a conviction, and the denial of the appellant's motion for judgment of acquittal does not constitute error. Finchum v. State,461 So.2d 37, 39 (Ala.Cr.App. 1984); Parrish v. State,494 So.2d 705, 709 (Ala.Cr.App. 1985). The State presented sufficient evidence to support the jury's finding of the appellant's guilt.
 VI
The appellant argues that the trial court erred in charging the jury that if two persons combine to commit a charged offense, then one is guilty of the acts of the other and that one could aid and abet by being present with the intent to act. The appellant notes that he was not charged under a conspiracy theory. The appellant further argues that the trial court erred in failing to give one of his requested charges.
 "According to § 13A-2-23, Code of Alabama (1975);
 " 'A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
" '. . .
 " '(2) He aides and abets such other person in committing the offense. . . .'
"The commentary to § 13A-2-23 states:
 " 'Regarding the extent of liability as a consequence of the principal's actions, Alabama case law has held that as a general rule each person entering upon an unlawful purpose is responsible for everything which may consequently and proximately flow from the unlawful purpose (whether committed by defendant or not, and whether specifically intended or not). . . .'
 "For purposes of indictments and trials, there is no distinction between principals and accessories under Alabama law. Lewis v. State, 469 So.2d 1291, 1297 (Ala.Cr.App. 1984), affirmed, 469 So.2d 1301 (Ala. 1985).
 " ' "Aid and abet 'comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary.' " Jones v. State, 174 Ala. 53, 57, 57 So. 31 (1911), quoted in Radke v. State, 292 Ala. 290, 292, 293 So.2d 314 (1974). If the jury is convinced beyond a reasonable doubt that the defendant was present with a view to render aid should it become necessary, the fact that the defendant is an aider and abettor is established. Jones, supra; Raiford v. State, 59 Ala. 106, 108 (1877). "The culpable participation of the accomplice need not be proved by positive testimony, and indeed rarely is so proved. Fuller v. State, 43 Ala. App. 632, 198 So.2d 625. Rather the jury must examine the conduct of the parties and the testimony as to the surrounding circumstances to determine its existence." ' Miller v. State, 405 So.2d 41, 46 (Ala.Cr.App. 1981); Watkins v. State, 357 So.2d 156, 159
(Ala.Cr.App. 1977), cert. denied, 357 So.2d 161
(Ala. 1978).
 Gwin v. State, 456 So.2d 845, 851
(Ala.Cr.App. 1984)."
Wallace v. State, 530 So.2d 849, 855-56 (Ala.Cr.App. 1987), writ denied, 530 So.2d 856 (Ala. 1988), writ denied,530 So.2d 861 (Ala. 1988). See also Clements v. State,370 So.2d 708, 713 (Ala.Cr.App. 1978), reversed on other grounds,370 So.2d 723 (Ala. 1979), overruled on other grounds, *Page 905 Beck v. State, 396 So.2d 645 (Ala. 1980) (wherein the trial court's charge on this matter was almost identical to the present language by the trial court.) Thus, the appellant's argument that the trial court erred in giving this complicity charge to the jury is without merit. See Craft v.State, 402 So.2d 1078, 1080 (Ala.Cr.App. 1981), writ denied, 402 So.2d 1080 (Ala. 1981).
The appellant further argues that the trial court erred in refusing to give the following requested charge:
 "I charge you, members of the jury, that mere presence at the scene of the crime is not sufficient to establish that the defendant aided and abetted the crime, and, unless you find beyond a reasonable doubt that the defendant was a participant in the crime, you must find the defendant not guilty."
The record indicates that the trial court sufficiently instructed the jury on the applicable legal principles contained in the appellant's requested jury charge. The record indicates that the trial court charged the jury as follows:
 "Now I do want to state this. It is not a crime merely to be present at a place where a crime is committed. I have mentioned that to you before. And I gave you the example that if someone in this courtroom were to shoot me right now under conditions that would be murder, your being here would not make you guilty of aiding and abetting. But someone's presence at the scene of the crime to make them guilty of aiding and abetting must be such a presence as would sanction or encourage the physical act, and one must attend to the crime for the purpose of giving assistance in the crime if necessary, or one must actually have given assistance in the crime."
The appellant suffered no prejudice because the trial court's instruction sufficiently covered the subject matter of the appellant's requested instruction, and therefore the appellant's requested instruction was properly refused. Leev. State, 562 So.2d 657 (Ala.Cr.App. 1989). "A trial court has broad discretion in formulating its jury instructions, provided they are an accurate reflection of the law and facts of the case." Coon v. State, 494 So.2d 184, 186
(Ala.Cr.App. 1986). Moreover, "[i]t is not reversible error to refuse a written requested charge which merely states an abstract principle of law without containing instructions as to the effect such law has on the issues involved in the case."Jackson v. State, 432 So.2d 504 (Ala.Cr.App. 1983). We find no error in the trial court's refusing to give the appellant's requested charge.
AFFIRMED.
All the Judges concur.
[1] The accomplice's statement is included in the record; it clearly indicates that the appellant took an active role in the offense.